Mr. Vetter. May it please the Court, David Vetter from Daytona Beach. Thank you for the opportunity to present Mr. Bourtzakis' case. He filed a petition to naturalize to become a United States citizen in federal court. The judge dismissed the complaint under Rule 12b-6 for failure to state a cause of action. This is an appeal from that dismissal. The framework for review is de novo, with the Court construing all the allegations of our complaint as true and drawing inferences most favorable to him. We request the Court to look strictly at the allegations in the complaint, not to any extraneous documents as Mr. Bourtzakis did not attach any, nor were any needed to state a cause of action. It was quite a simple complaint. Dismissal is appropriate only if there is no relief under which could be granted to Mr. Bourtzakis. But look, it's a question of law here, right? Whether the Washington State conviction for delivery of cocaine categorically qualifies as an aggravated felony. That's a legal determination, right? Exactly. Okay. Getting into how we have to construe the evidence in the light most favorable to the plaintiff and all that kind of stuff, really to me is beside the point. Can I say one more thing about the framework, and that is that the aggravated felony statute enacted by Congress is very punitive. For many, many years, a man could show that he had reformed and that he had five years of good moral character and naturalized. It's a punitive statute perpetually precluding permanent residents of the United States from becoming citizens. The Court is correct. There's two crimes that we have specified in our brief that are outside the definition of a controlled substance under the Federal Controlled Substance Act, and that is a standard. Would Washington prosecute a crime that is not specifically defined in the Federal Controlled Substances Act, and we didn't use any legal imagination, which seems to be in short supply in our office, to come up with these crimes that are outside the Federal Controlled Substances Act? I just wonder whether the bottom line here is, is it reasonably probable that he would be prosecuted? I guess you cannot point to any one case, but is there any other evidence that would even suggest that there is any possibility, a reasonable possibility that this would happen? The answer is no. It is somewhat of a theoretical exercise. Firstly, we allege in the complaint that we will produce evidence that there were prosecutions for these crimes. That has to be taken as true. Okay? If the government had denied the complaint, denied that, and filed for a motion for summary judgment and put an affidavit, that perhaps could have been resolved, but it wasn't. This allegation is true. Would you have to produce something that will make an issue a fact? Indeed we will. No, but that summary judgment, you can't just say, you know, take mine as true and produce nothing. Have you produced any evidence at all that there is an issue of fact, whether it's reasonably probable that the prosecution would go? It is our intention at trial, Your Honor, to do so. Absolutely. Imagine a witness who will testify that he was prosecuted for that crime. Imagine a certified copy of a judgment showing that a man had been prosecuted for that crime, or even a lawyer who had defended a man. Absolutely, we plan to prove this at trial. This court is not really supposed to go there because it was alleged in the complaint that he would be prosecuted for these crimes, and indeed, the two courts in two cases have found that these were broader crimes. Also, Your Honor . . . It seems to me that the problem is the Ninth Circuit really did not look at the standard for federal accomplice liability as interpreted in Roseman. We did. We read Roseman and Cronin so many times that we became increasingly . . . It seems to me one uses knowledge, one uses intent, but it looks to me like they're the same standard. The courts have really muddled their way through this, Your Honor, and so I would point to a couple of things. The legislature of Washington said you're culpable if you have knowledge. Congress said you're culpable if you willfully intend that it occur. Yeah, but then Roseman describes that standard, enunciates that standard as one of knowledge. It does seemingly do that, but remember . . . I mean, that's the decision, that's the authoritative decision of the Supreme Court of the United States. We have to accept that, right? That's how to understand the statute. These cases are very confusing, but let me try and help the Court as best I can. These legislatures chose different terms. Washington chose knowledge. Congress chose willful and uses the term of specific intent. If you drill down on this, if you go through the plain meaning of words, when we go through life, if somebody says you intend something, it's quite different if somebody says you knew about something. That's the way we understand what these words mean. If you look at Black's Law Dictionary and we went there, we found a long historical body of jurisprudence treating knowledge different from willfulness and intent. Let me just quote one thing from Black's Law Dictionary. They pulled out a LeFauve and Scott, the criminal law treatise. Yeah, but here's . . . I mean, here's what Roseman says. It says the intent requirement is satisfied when a person actively participates in a criminal venture with full knowledge of the circumstances constituting the charged offense. That's the same standard as the Washington standard. There's also language in Roseman that says as a common law, a person is liable under this section for aiding and abetting if and only if he takes an affirmative act in furtherance of that offense with the intent of facilitating the offense's commission. It is very confusing. That's the Washington standard, too. But not on the statute, it's not. Your Honor . . . We can't just say, well, the statutes read differently and we're not going to consider the authoritative constructions of those statutes on the case of the federal statute by the Supreme Court of the United States and then in the case of the Washington statute by the Supreme Court of Washington. We have to accept their interpretation of those statutes, do we not? It's de novo review, Your Honor, so be mindful of that. It's knowledge . . . Yeah, it's a question of law. Okay, I'm very mindful of that. Don't I have to, though, accept what the Supreme Court of the United States and the Supreme Court of Washington say about each of those statutes? Yes, and we read . . . Where is the difference, then, when I look at their case law? We read . . . It is confusing. We read them as different. At the end of the day, the Supreme Court of Washington said it's knowledge, and the Supreme Court of the United States goes with this willfulness, and Your Honor, they introduced something else. If you read Justice Alito's dissent in Rosamond, we can all become completely confused about this. Well, I usually don't try to figure out what the Supreme Court precedent is by reading the dissent. He pointed out that the majority in Rosamond introduced a temporal consideration into the mens rea requirement. The defendant must have known in advance that one of his cohorts would be armed. There now is, in the federal mens rea requirement, a temporal factor. When did you . . . When was this intent, this willfulness . . . Well, here's what the Washington Supreme Court has said in State v. Cronin, that to be an accomplice, an individual must have acted with knowledge that he or she was promoting or facilitating the crime for which that individual was eventually charged. That seems to me the same standard. They do . . . Language is confusing, Your Honor. We just point to Valdivia, which is specifically on point, well-reasoned, no court has contradicted it. It's still good law. At least we have circuit court judges who have looked at this specific issue and found that it is not an aggravated felony. You've saved several minutes for rebuttal. Let's hear from Ms. Taylor. Thank you, Your Honor. May it please the Court, Michelle Taylor for the Federal Defendants. As Judge Pryor has just illustrated through his questions and his citation to Rosamond and Cronin, there's no difference, there's no daylight between the Washington aiding and abetting standard and the Federal aiding and abetting standard. Rosamond says that participation with knowledge satisfies intent and that's what we know that Washington law requires. We also know that . . . I might be with your adversary, but the problem for me is that case law. Also, Washington has adopted the peony standard, which is what Rosamond called the canonical formation of the purposeful intent. We see that in the J.R. case and the Wilson case that Washington law has adopted that federal standard. It's tied its law to the federal standard. The Ninth Circuit, I think, went wrong in Valdivia Flores for a couple of reasons. First of all, I think by talking about the federal standard as specific intent, I think it went off track there. We know from Rosamond . . . Did not discuss Rosamond. Right. And we know from Rosamond that the defendant in the 924C context doesn't have to intend the gun. The Rosamond actually rejected that formulation, said the defendant's not going to be happy with our result because all we need is advanced knowledge. So Rosamond tells us that we don't need specific intent. We can also see from Duenas-Alvarez that the federal aiding and abetting standard doesn't get cut off based on actions that are specifically intended because in Duenas-Alvarez, the court looked at whether the California standard by permitting reasonably foreseeable consequences, whether that was outside the federal standard, and the Supreme Court said no. But if I could take a step back from this, I think getting to the comparison between state and federal aiding and abetting liability is really the wrong question because the question is was the defendant convicted of a qualifying offense? And when you're talking about convictions, whether a defendant was convicted under an aiding . . . You have to use the categorical approach, right? Correct, Your Honor. But the categorical approach historically has applied to the crime of conviction, the statute of conviction. Right. So for instance, in Maloli, it said that the focus is on conviction, not conduct, and that we focus on the statutory definition of the offense of conviction. So the offense . . . You have to do that comparison to do that, right? You compare the Washington Drug Statute with the Federal Controlled Substance Act, but in the wake of Valdivia Flores, defendants are asking courts to go and parse state aiding and abetting law, even in circumstances where the state statute of conviction or the record has nothing to do with aiding and abetting. Now, in Duenas-Alvarez, the Supreme Court had to make that comparison because the statute of conviction itself encompassed liability. But in Higgins, this court refused to go down that road, and in Gamel, they both said an aiding and abetting liability, that's not the crime of conviction. Our concern is the crime of conviction. An aiding and abetting liability simply is one theory of liability. It's not a crime of conviction. It's not a separate crime. But it's a theory. It's a theory of liability. You could satisfy the proof for that conviction by proving aiding and abetting, right? Right. But under that theory, the aiding and abetter stands convicted of the crime just the same as the person who might have committed it himself. So it's not a lesser culpability or a lesser means. It's just a legal theory of liability. And just like Pinkerton liability or aiding and abetting liability or direct liability, that's not the test. We don't see that in the categorical approach of courts. Jumping to this next question, as far as I know right now, the Ninth Circuit is an outlier that has leapfrogged the statute of conviction analysis to look at a totally different statute, an aiding and abetting statute, and then analyze that. And given all the tension and confusion about aiding and abetting law, that's going to make the categorical approach even more difficult for courts to apply. And there was... That's a scary thought. And the consequence... First of all, there's nothing that indicates that Congress intended to cut out or to refer to aiding and abetting. I talked about the statute of conviction. And so I think this is running away from Congress's intent. I think the law is a morass because, as even Rosamond recognized, very often you have different formulations that mean the same thing. So you see in some cases language of specific intent or other times you say shared the co-defendant's intent. And very often you see sort of different phrasings, and defendants will seize on these different phrasings to say their convictions don't qualify. And in both Higgins and in Gamble, the Eighth Circuit said, we don't have to go down that road. Our question is, is the crime of conviction a qualifying offense? So we don't have to step back and do this comparison of aiding and abetting law. So I would ask the court to kind of give us clarification. I guess I'm confused by this because it does seem to me that when we're comparing the crime of conviction with the federal offense, that if the state could have satisfied its burden with the proof that under the theory of liability for aiding and abetting, that that's a relevant consideration. I guess I'm struggling with why that's not the case. Well, I think when your statute of conviction encompasses aiding and abetting liability, for instance, in Duenas Alvarez, where the California theft statute itself addressed. So that was the crime of conviction that encompassed that. But in the ordinary case, when you're just talking about whether the defendant was convicted of an offense, you're equally convicted regardless of the theory of liability. There's nothing that Congress said. Congress says if you're convicted of an aggravated felony, then you're not eligible for naturalization. Congress didn't say if you're convicted. In other words, if you get to the theory of liability, you're sort of shifting to a conduct-based analysis. Did the defendant actually do everything, or did he simply aid and abet in some sort of... And that's what Congress said we're getting away from. We're talking about a conviction-based analysis. I understand the point that so long as aiding and abetting makes you liable for the commission of the offense, it's kind of a red herring. But it seems to me, though, that in terms of an elements cause analysis, though, you have to consider the aiding and abetting theory as part of the elements theory, no? Well, the Ninth Circuit said that aiding and abetting is an element, but I think that's one of the things that the Ninth Circuit got wrong in Bill W. Flores. Because even under state law, they say that no, aiding and abetting is not an element, it's not a means, it's just a theory of liability. The elements of the underlying crime remain the same, regardless of the theory of liability that led to that conviction. A defendant who's convicted under an aiding and abetting liability theory is not less convicted. He's convicted of the crime, and the question is, is the crime of conviction an aggravated felony? But even if we get to the analysis, the only other case that sort of got to this analysis is that Bolin case that we cited from the Eighth Circuit in our supplemental authority letter, and it found that Iowa, which is one of the cases that plaintiff has identified as like Washington, one of the five outliers, it said, no, Iowa, just like Washington here, is not conceivably different than the federal standard. But Bolin didn't even agree that the Ninth Circuit was right, that that's the proper analysis. Bolin said, well, assuming that's the right framework, we still find that aiding and abetting in Iowa matches the federal standard. So the court could do the same sort of thing here. Assuming that we have to reach this aiding and abetting liability issue, we see no daylight. But I don't think it's correct that that's, I think that that's just going to lead to further complication in the law when, if you look at Valdivia Flores and all the briefs that are citing it, this issue is going to be percolating across all the different circuits where defendants, or in this case, a plaintiff in an immigration case, will seize on particular little differences in formation or some of the tension in the language and say. I mean, that's the history of the categorical approach. Yes. And the consequence in the Ninth Circuit is that no generic crime would ever qualify, or no drug offense would ever qualify. And once we get into a situation like that, I think you've gone very far from Congress's intent, where a defendant who committed these predicates in Washington would not be subject to a higher sentence, while a defendant who committed these same predicates in Florida or Washington, or in a state where the standards match, would. So I just think going down that road is itself problematic. And if this court could, like Gamble and like Higgins, in a published decision, say we don't even have to go down that road, that might give some clarity to the law. But again, if we do go down that road, there's certainly no daylight between the Washington standard and the federal standard. The Ninth Circuit, I think, overstated what was required by federal law in Rosamond and understated what Washington required. But I guess if I could also take another step back, this only came up in a motion for reconsideration. So the only question is, did the district court abuse its discretion in not setting aside its order based on this Ninth Circuit non-binding decision? So in the context of reconsideration, this is a much easier case. Well, if the district court was wrong as a matter of law, it would be an abuse of discretion. Well, when it talks about the law, the matters of law, it's not a change in controlling authority. It's just a non-binding Ninth Circuit decision. So it talks about... It's persuasive authority. But I mean, at the end of the day, if the district court erred as a matter of law, then it would be... It would automatically be an abuse of discretion, right? Well, Rule 60, when it talks about it, it talks about clear or obvious law. So if you had a change in controlling law, if Valdivia Flores came from the 11th Circuit, I would agree. But when you have an issue that's created a circuit split and where the Ninth Circuit is wrong even in its analysis, I don't think that's the clear or obvious error that would be correctable on a motion for reconsideration. So I think this is actually a fairly easy case. There wasn't an abuse of discretion and denying reconsideration based on this new legal theory that hadn't been presented that relied on a non-binding and unpersuasive Ninth Circuit case. But it's actually a fascinating issue, whether aiding and abetting liability should come into play. I think the answer to that is no. But even if it does come into play, Washington's standard and the federal standard are a categorical match. We have this same problem arise in a little different way earlier this week, right? Yes, Your Honor. Are you aware of that? Are you referring to the Boston? Yes. Yes, Your Honor. I actually wrote the brief in Boston. All right. So you would say we shouldn't be doing that analysis there either. I agree, Your Honor.    I don't know. I don't know. I don't know. I don't know. I don't know. I don't know. It doesn't matter. He was convicted. Now, in that case, one of the- But you did do that in Cologne, right? In Cologne, I believe the court said that aiding and abetting makes the acts of the accomplice those of the principal as a matter of law. So I think that's the basis by which sort of aiding and abetting falls out of the equation. Because of that theory of liability, there's not a lesser culpability. They're both convicted of that crime. So I think, for instance, the easiest way to solve the Boston case- If that's true as a matter of Florida law, too, then Cologne controls. I think that's right. I think that in Duenas Alvarez, the Supreme Court said that's basically true across the board. They identified almost all states, I'm not aware of any states that haven't, obliterated those common law distinctions between accessories before the fact and the person who's present or the person who aids without being present. And to simply create all these accomplices are liable as principals. And so I think, really, at that point, unless the statute of conviction expressly is talking about something special about aiding and abetting liability as we had in Duenas Alvarez, I think normally you just say, he's convicted of this offense, this offense counts, therefore under the statute of conviction, if it's a categorical match, the analysis is done. Mr. Fetter? Thank you. Washington proscribes accomplice liability in the mens rea is knowledge. That's clear in the statute. The federal statute says willful. Common law, common sense, 300 years, 500 years of jurisprudence. We have never treated knowledge the same as intent or specific intent. I know these cases are confusing in the way they've- I'm not confused. I mean, it seems to me Cronin and Roseman described the law in the same way. Unless you read the statute, your honor. I have to read the statute as interpreted by the highest authority in each jurisdiction. That- And once I- Conceded. That once I do that, I'm not confused. And Mr. Bortzaki sees these culpability, these mens rea requirements as very distinct and very different. Even closely reading Cronin and Roseman. And your honor, on review of this particular issue, I think it's disappointing the government suggests somehow that you can't fully review this issue. Just so you know, the notice of appeal, we feel, was adequate on this issue. This issue was fully developed before the district court judge. In fact, the parties briefed this issue. The judge made substantive rulings on this issue. We briefed this issue. The issue in this case hasn't- I mean, I can tell you my own perspective. I can only speak for myself about this. But it seems to me that so long as your client argued in the district court that this is not an aggravated felony, then you have preserved the issue. And you can make any argument in support of that issue on appeal. And that individual arguments are not forfeited, regardless of whether they were made. Thank you, your honor. The issue is what matters. And that issue, to me, it seems- I can only speak for myself. It's clear. Review is de novo. Your honor, moving on. There is another crime that Washington can prosecute that we haven't discussed, and that is administering. Again, our legal imagination and our law- I mean, the federal standard includes that. Not according to the Burgos Ortega case, your honor. We did not read it that way. It is a complicated statute, but our read of it is that administering is prosecutable by Washington, but not by the U.S. when you read the statute. What about the federal definition of dispense? I read that it uses the word administering. It was a confusing read. It's 802.10, subparagraph 10. Yes. And, your honor, on the- there's one other thing I think that we should repeat, and that is regarding this realistic probability test. This court decided Ramos and has constrained itself in using this test if the statutory language itself establishes that it could be prosecuted in the state. There's two reasons. Not only the Ramos case, the statutory language here we say on probability for an accomplice is clear and establishes itself, the possibility, the probability of prosecution, but this case is a little different because we alleged in the complaint that we would provide proofs, and it's an issue for trial at this point. So, your honor, in summary, Mr. Bortzakis wishes to have a trial in front of the district court in order to show that he has five years of good moral character. If this court finds that he was convicted of an aggravated felony, which is a penalty statute and should be strictly construed, he will not have such an opportunity. It's not just that he cannot become a citizen of the United States, aliens, permanent resident aliens are deportable from the United States. So, the consequences are about as- the stakes are about as high as they get under our immigration laws, and we would ask the court to please consider our arguments that accomplice liability has a very different mens rea because the statute itself says knowledge, the federal willfulness. We all know the difference between knowledge and willfulness and why these cases do- are muddled, and it confused me, perhaps, your honor, was not confused by the read of Redmond. When I read Justice Alito's dissent and read and reread and drilled down to Bailey and drilled down in the Black's Law Dictionary, we find there is a very distinct body of law that says knowledge and willfulness, which is specific intent, are not the same and therefore this is- cannot be found to be an aggravated felony. Thank you, Mr. Fetzer. Thank you for the opportunity. I think we have your case. We'll be in recess until tomorrow morning.